**SO ORDERED.**

**SIGNED this 14 day of June, 2012.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

JOHN GLASS HAMILTON, SR.,            CASE NO. 11-07491-8-JRL
                                      CHAPTER 11
    DEBTOR.

_____

**ORDER**

This matter came before the court on the Bankruptcy Administrator's ("BA") motion to disqualify the debtor's attorney and Brian Keesee's motion to appoint a chapter 11 trustee. A hearing was held on May 7, 2012 in Raleigh, North Carolina.[1]

In August 1996, the debtor's parents conveyed their interest in 7608 Partridge Circle, Sanford, North Carolina ("7608 Partridge") to the debtor. The debtor testified that 7608 Partridge was his childhood home, his parents remained in the home after the transfer, he has never made a payment on the home, and that he never thought he actually owned the property. He also stated that his parents faced financial difficulties in August 1996 and transferred 7608 Partridge to the debtor to refinance the property. On or around February 16, 2009, the debtor

---

[1] This hearing was held in conjunction with the BA's motion to disqualify counsel and Brian Keesee's motion to appoint a chapter 11 trustee in the matter of In re Kimberly Nifong Mitchell, 11-08880-8-JRL.

conveyed via warranty deed his interest in 7608 Partridge to his sister so that she could refinance the property for their parents.

On or around March 30, 2009, the debtor transferred his interest in 7620 Partridge Circle, Sanford, North Carolina to his sister. Two days prior to the debtor filing for bankruptcy, the debtor's sister transferred the property back to the debtor. A similar conveyance occurred on or around April 14, 2009, when the debtor conveyed his interest in a piece of real property located in Beech Mountain, North Carolina to his sister. She later transferred the property back to the debtor.

Mr. Keesee holds several contingent unliquidated personal injury tort claims against the debtor. He alleges that the debtor engaged in acts of alienation of affection, criminal conversation, and intentional infliction of emotional distress. Mr. Keesee's lawsuit against the debtor is currently pending in Brunswick County, North Carolina.

The debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on September 30, 2011. The above mentioned pre-petition transfers were not initially disclosed in the debtor's original schedules. On October 19, 2011, the debtor filed an application to employ Oliver Friesen Cheek, PLLC ("OFC") as counsel. The application was approved by the court on November 3, 2011.

On November 4, 2011, Kimberly Nifong Mitchell, Mr. Keesee's ex-wife, transferred three pieces of real property to JP Double H Properties, LLC ("JPDHP"). The debtor has a 50% ownership interest in JPDHP. The deal was structured as follows: on November 4, 2011, Ms. Mitchell executed a North Carolina General Warranty Deed ("warranty deed") conveying two pieces of real property to JPDHP. That same day Ms. Mitchell executed a North Carolina Gift

Deed ("gift deed") conveying one piece of real property to JPDHP.  Both deeds were recorded with the Brunswick County Register of Deeds on November 7, 2011.  The tax stamps on the warranty deed reflected a sales price of $640,000.00, and the tax stamps on the gift deed reflected a sales price of $0.00.

Although the written documents tend to show otherwise, the debtor testified that all three properties were transferred to JPDHP in consideration of $640,000.00.  JPDHP and Ms. Mitchell entered into an offer to purchase sales contract which made no mention of the property conveyed by deed of gift.  The Housing and Urban Development ("HUD") statement only mentioned the properties transferred by warranty deed.

The debtor testified that the sales price was equal to the fair market value of the properties.  In addition, he stated that he was Ms. Mitchell's listing agent on her real property located in Oak Island, North Carolina and that Ms. Mitchell's property management company, Better Beach Rentals, Inc., acts as the management company for the debtor's rental property.  The debtor and Ms. Mitchell are also close personal friends.

Ms. Mitchell filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on November 21, 2011.  On December 22, 2011, Ms. Mitchell filed a motion to employ OFC as counsel.  This application made no mention of the JPDHP transaction, nor of OFC's possible conflict in representing both Ms. Mitchell and the debtor.  The debtor claims to have notified OFC of the transaction around the time it took place.  Ms. Mitchell's motion to employ OFC was allowed on January 9, 2012.  Later that day, Ms. Mitchell filed an amendment to her statement of financial affairs and disclosed the JPDHP transaction to the court and BA for the first time.

In response to questions about the JPDHP transaction, OFC sent the BA two e-mails

detailing the transaction, one on February 6, 2012, and another on February 22, 2012. The February 6 email contained two deeds of trust and explained the JPDHP transaction. The later February 22 email contained information about JPDHP, including the articles of organization, the settlement statement, appraisals and comparative market analyses of the property, and the commercial lease agreement. This email went on to discuss the history of JPDHP and mentioned the names of its members, including the debtor, but the email did not disclose or make apparent that OFC, while representing Ms. Mitchell in her case, was also representing the debtor.

The BA filed a motion to disqualify OFC in both Ms. Mitchell and the debtor's bankruptcy cases. On April 20, 2012, OFC filed an amended attorney's affidavit which stated that OFC inadvertently filed the wrong attorney affidavit on December 22, 2011. The original affidavit that OFC intended to file stated, "[OFC] also represents John Hamilton in a Chapter 11 proceeding, Case No.: 11-07491-8-JRL. Mr. Hamilton is the Debtor's listing agent on the Debtor's real property located at 1108 W. Yacht Dr. The Debtor's property management company, Better Beach Rentals, Inc. acts as the management company for Mr. Hamilton's rental real property." This affidavit made no mention of the JPDHP transaction nor of Mr. Hamilton's involvement.

## DISCUSSION

## MOTION TO APPOINT A TRUSTEE

Mr. Keesee contends a chapter 11 trustee should be appointed in the debtor's case due to the debtor's pre-petition fraudulent transfers and pending state court litigation. The BA does not support Mr. Keesee's motion to appoint a trustee in the debtor's case. The debtor argues he held 7608 Partridge in a resulting trust for the benefit of his parents, and transferred the property to

4

his sister for the benefit of his parents rather than himself. In regard to the other two pre-petition transfers, any value available to a trustee under 11 U.S.C. § 550 has already been recovered by and for the benefit of the bankruptcy estate.

The court is required, upon the request of a party, to appoint a trustee any time after the case commences and before the confirmation of the plan for cause. 11 U.S.C. § 1104 (2006). Pursuant to § 1104(a) of the Bankruptcy Code, cause includes, "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by the current management, either before or after the commencement of the case, or similar cause." Id. § 1104(a)(1). "As this court recently reiterated, '[t]he appointment of a trustee in a chapter 11 case is an extraordinary remedy, and there is strong presumption in favor of allowing the debtor to remain in possession.'" In re Smith, Case No. 11-08865 (Bankr. E.D.N.C. May 21, 2012) (Leonard, J) and In re Piedmont Center Investments, LLC, Case No. 11-06178-8-JRL, 2011 WL 5903398 (Bankr. E.D.N.C. Sept. 8, 2011) (Leonard, J) (quoting In re Tanglewood Farms, Inc. of Elizabeth City, Case No. 10-06719-8-JRL, 2011 Bankr. LEXIS 624, at *4–5 (Bankr. E.D.N.C. Feb. 10, 2011) (Leonard, J) (citing In re Heck's Props., 151 B.R. 739, 756 (S.D. W. Va. 1992))).

It is within the discretion of the court to determine whether conduct constitutes cause. Committee of Dalkon Shield Claimants v. A.H. Robins Co., 828 F.2d 239, 242 (4th Cir. 1987). Specifically, the court must determine whether the "conduct shown rises to a level sufficient to warrant the appointment of a trustee." Id. The court must construe § 1104(a)(1) in a way that is in harmony with the rest of the Bankruptcy Code, and "due consideration must be given to the various interests involved in the bankruptcy proceeding." Id. As well, in circumstances where fraud or mismanagement is present, the legislative history of § 1104(a)(1) suggests that the court

5

should "balance the benefit to be gained from such an appointment against the detriment to the reorganization effort and the rights of the debtor that may result from such an appointment." 7 COLLIER ON BANKRUPTCY ¶ 1104.02[3][b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). However, if the court in its discretion determines that cause exists, the statute mandates that a trustee be appointed. See 11 U.S.C. § 1104(a) (stating that where cause is found, "the court *shall* order the appointment of a trustee.") (emphasis added).

Pursuant to North Carolina law, when

> a person uses the money of another to acquire legal title in property . . . "equity creates a trust in favor of such other person commensurate with his interest in the subject matter. A trust of this sort does not arise from or depend on any agreement between the parties. It results from the fact that one man's money has been invested in land and the conveyance taken in the name of another. It is a mere creature of equity."

American Hotel Management Associates, Inc. v. Jones, 768 F.2d 562, 568 (4th Cir. 1985) (quoting Teachey v. Gurley, 214 N.C. 288, 199 S.E. 83, 86–87 (1938)).

The court finds that two of the transfers have already been brought into the bankruptcy estate and the third should likely be classified as a resulting trust. Therefore, a trustee might recover nothing if appointed. Also, the state tort claims are currently pending and are contingent. Thus, the allegations alone do not tend to show the debtor has acted fraudulently or mismanaged the estate. Therefore, the court finds that there is no evidence of pre-petition fraud to justify the extreme remedy of appointment of a trustee.

## **DISQUALIFICATION OF DEBTOR'S COUNSEL**

The BA contends that the JPDHP transaction gives rise to a colorable claim that the transfer was a fraudulent conveyance which creates an actual conflict of interest for OFC.

Subject to the court's approval, § 327(a) of the Bankruptcy Code authorizes the trustee to

6

employ attorneys "that do not hold or represent an interest adverse to the estate, and that are disinterested persons[.]" 11 U.S.C. 327(a). Because the debtor in possession, with some limitation, is granted the same powers as a trustee, this applies to debtors in possession in chapter 11 cases. See 11 U.S.C. § 1107(a) ("[A] debtor in possession shall have all the rights, . . . and shall perform all the functions and duties . . . of a trustee serving in a case under this chapter."). Section 327 does not immediately disqualify a debtor's attorney whom is also employed by a creditor to the debtor. See 11 U.S.C. § 327(c); see also Johnson v. Richter, Miller & Finn (In re Johnson), 312 B.R. 810, 819 (E.D. Va. 2004) ("§ 327(c), which governs the employment of an attorney or professional who represents a creditor, creates a limited exception to [§ 327(a)]"). Instead, a person is not disqualified "unless there is an objection by another creditor or the United States trustee." 11 U.S.C. § 327(c). In the event of an objection, "the court shall disapprove such employment if there is an actual conflict of interest." Id.

An actual conflict of interest is not defined in the Bankruptcy Code. See 11 U.S.C. § 101; In re Johnson, 312 B.R. at 822. Nor have courts set "bright line rules" as to when an actual conflict exists. In re Johnson, 312 B.R. at 822. However, courts have concluded, "an alleged conflict of interest is 'actual' and warrants disqualification under § 327(c) if there is 'active competition between two interests, in which one interest can only be served at the expense of the other.'" Id. (quoting In re BH & P, Inc., 103 B.R. 556, 563 (Bankr. D.N.J. 1989), aff'd 949 F.2d 1300 (3d Cir. 1991)).

When a law firm represents a debtor's estate and an entity that may face liability for a fraudulent conveyance, the firm has an actual conflict of interest. In re Adam Furniture Indus., Inc., 158 B.R. 291, 300 (Bankr. S.D. Ga. 1993). In Adam Furniture, the law firm representing

7

the debtor and its principal received fees from the debtor and from entities that its creditors accused of receiving preferential transfers and fraudulent conveyances. Id. at 294, 300–01. The court disqualified the law firm holding, "[i]n any fraudulent conveyance or preferential transfer dispute, the opposing parties have adverse interests because each is asserting that it has the proper right to certain assets." Id. at 300. The court went on to state:

> The law firm was not ignorant of these allegations or of the facts alleged to support them, and although no preference or fraudulent conveyance action has yet been taken, the potential for such actions and the requirement that the debtor's counsel evaluate such claims is already present. Characterizing this as merely a potential conflict of interest rather than actual does not resolve the law firm's dilemma.

Id. at 300–01. The court noted, "[i]f there is even a possible future conflicting interest present that could prevent the counsel from fulfilling his duties, that conflict is 'actual.'" Id. at 301.

Here, the facts are very similar to Adams Furniture. In the two weeks prior to filing, the debtor, through an LLC, had been involved in a transaction with Ms. Mitchell, another one of OFC's clients. The court finds that there may be legal defects in the way the JPDHP deal was structured that need to be seriously investigated.

First, the court is not convinced that the sale price was fair market value. OFC did not present evidence that they independently researched the value of the properties. The only evidence of value came from the debtor, who is clearly an interested party. Evidence was presented that Ms. Mitchell stated in her divorce papers that six months prior to the sale, the property was worth 1.5 times more than the sale price used in the JPDHP transaction. Thus, OFC owed a duty to Ms. Mitchell to fully investigate the nature of the transaction and file an action to recover for fraudulent conveyance if necessary. This obligation is at odds with OFC's duty not to undo the JPDHP transaction in the debtor's case.

Furthermore, there is nothing in writing that ties the deed of gift into the sale. These facts create a colorable fraudulent conveyance claim. This presents an actual conflict of interest, and OFC cannot continue to represent both clients. OFC is disqualified from representing Ms. Mitchell, but may continue to represent the debtor.

Based on the foregoing, the BA's motion to disqualify OFC and Mr. Keesee's motion to appoint a chapter 11 trustee are **DENIED**.

**END OF DOCUMENT**